NOT RECOMMENDED FOR FULL-TEXT  PUBLICATION
File Name:  08a0188n.06
Filed:  April 9, 2008

No.  06-4500

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DA XING LIN,

     Petitioner,

v.

MICHAEL MUKASEY, Attorney General,

     Respondent.

ON  REVIEW  FROM  THE  BOARD  OF
IMMIGRATION APPEALS

_____/

BEFORE:    MOORE, CLAY and ROGERS, Circuit Judges.

     CLAY, Circuit Judge.  Petitioner, Da Xing Lin, seeks review of a decision of the Board of

Immigration Appeals ("BIA"), dated October 26, 2006, upholding an immigration judge's denial of

his application for asylum pursuant to 8 U.S.C. § 1158(a), withholding of removal pursuant to §

241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and withholding

of removal under the Convention Against Torture ("CAT").  Specifically, Lin appeals the BIA's

adverse credibility findings, alleging that they do not go to the heart of his claim, and the

determination that he failed to demonstrate a well founded fear of future persecution.  For the

reasons that follow, we **DENY** the petition for review.

## BACKGROUND

Petitioner, Da Xing Lin, is a citizen of China who illegally entered the United States via the Virgin Islands on March 23, 2002. Lin was immediately apprehended by immigration authorities and served with a notice to appear charging him with removability from the United States pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act. On April 8, 2003, after admitting removability, Lin applied for asylum, withholding of removal and Convention Against Torture ("CAT") protection.

In his application for asylum, withholding of removal and CAT protection, Lin alleged that he fled his native China to escape persecution by government family planning officials. Lin alleges that he is a farmer with limited education, who has a wife and two children who reside in China. Lin claimed that after the birth of his first daughter in April of 1996, family planning officials forced his wife to wear an intrauterine device ("IUD"). Nevertheless, Lin's wife again became pregnant and gave birth to a second daughter in April of 2001.

One month after the birth of their second child, Lin and his wife fled their village both in hopes of having yet another child and out of fear that they would be subject to a sterilization order by family planning officials. According to Lin, the family's absence from the village did not go unnoticed by government officials as they began looking for Lin almost immediately. Lin alleges that a sterilization order was issued by government officials ten days after they absconded from the village. Lin alleges that government officials, in their attempt to locate his family and secure compliance with the sterilization order, took his mother "hostage."

After hearing of the detention of his mother, Lin and his wife returned to the village. Upon return, Lin's wife was forced to undergo sterilization at FengChend Hospital by family planning authorities. Seeking redress for his wife's sterilization and his mother's mistreatment, Lin alleges that he confronted the leader of the family planning authority. Thereafter, Lin alleges that he was attacked by the leader's family and accused of assault. As a result of the confrontation and the accusation of assault, Lin fled the village and went to Fuzhou City for seven to eight months. Lin further alleges that he left China for the United States out of a fear of persecution from the Chinese government as a result of his attempted defiance of family planning authorities.

In addition to his narrative detailing his fear of future persecution, Lin attached a number of documents in support of his application. The documents included a marriage certificate, x-rays conducted after the sterilization of Lin's wife, and a disease certificate. Both the x-rays and disease certificate were issued by the Hospital of Fujan Province and dated June 25, 2002. Lin also submitted a Birth Control Operation Certificate, which was dated May 30, 2001. Additionally, Lin submitted a letter from a sister who resided in Toledo, Ohio regarding his wife's sterilization in China. In her letter, Lin's sister described the circumstances surrounding the sterilization of Lin's wife. Significantly, the letter represented that the sterilization took place after the birth of his first child in 1996, rather than in 2001, after the birth of Lin's second child.

On May 2, 2005, a hearing was conducted regarding Lin's application for asylum, withholding of removal, and CAT protection. Lin testified in support of his application. During his testimony, Lin testified that he came to the United States after his wife was forced to wear an IUD. After a follow-up question from his counsel, Lin corrected himself and stated that he sought asylum

after his wife was sterilized after the birth of their second child. Lin also recounted the facts leading up to his wife's sterilization. When asked by the Immigration Judge ("IJ") why his wife returned to the village despite the sterilization order, he contended that she returned because of her obligation to their family, notwithstanding her fear of sterilization. Lin further testified that upon finding that his wife had been sterilized, he went to the office of the family planning official responsible, rather than the home of the official, as he had indicated in his written application.

The IJ asked a number of additional questions regarding perceived inconsistencies between Lin's written application and his testimony during the hearing. The IJ asked Lin whether he faced persecution while residing in Fuzhou City and why such information was not documented in his written application. Lin responded that he was notified of attempts by family planning officials to locate him by friends and stated that he did not relate the attempts of family planning officials to find him in his written application because he was unaware of the need to include such information. Lin further testified that he left China without permission out of fear of family planning authorities. When asked what would happen if he were repatriated to China, Lin stated that he would be fined and prosecuted by the Chinese government.

On May 2, 2005, the IJ issued an oral decision denying Lin's application for asylum, withholding of removal, and CAT protection. In a written opinion, the IJ summarized the grounds for denial of Lin's application. As an initial matter, the IJ denied Lin's application after finding that it was not timely filed. Alternatively, the IJ found that even if Lin's application was timely filed, that he failed to sustain his burden of proof because he was not credible, had omitted key details from his written application without adequate explanation, and provided testimony that contradicted the

information provided in his written application. The IJ further discounted the documentary evidence submitted by Lin because the records submitted were dated a year after the alleged sterilization and were not issued by the hospital where the procedure was performed. Additionally, the IJ found that the "birth control operation certificate" submitted by Lin to be "highly suspect" based on a State Department report which stated that the only official document released by the family planning commission in China is a certificate given to couples who promise to only have one child. (IJ Op. at 23) The IJ observed that "[t]hese inconsistencies perhaps in and of themselves would not necessarily undercut the respondent's credibility. However, these inconsistencies coupled with key omissions in respondent's written application support or provide specific and cogent reasons to support this Court's adverse credibility finding." (I.J. Op. at 20). Moreover, the IJ found that Lin did not meet his burden of proof with respect to his application for asylum as he failed to establish a well founded fear of future persecution if he were to return to China.

Lin appealed the denial of his application for asylum, withholding of removal and CAT protection to the BIA. Setting aside the question of the timeliness of Lin's application, the BIA affirmed the IJ's credibility determination. In addition, the BIA affirmed the IJ's finding that Lin failed to demonstrate a well founded fear of persecution. Lin now petitions for review of the BIA's determination.[1]

---

[1]Although the BIA found that Lin did not meet his burden with respect to his claims for asylum and withholding of removal, Lin only challenges the findings of the BIA with respect to its denial of his application for asylum. We therefore treat his claim for withholding of removal as abandoned.

## DISCUSSION

### A.    Standard of Review

"When the BIA does more than adopt the decisions of the IJ, 'our review is limited to those actions taken by the BIA.'"  *Preldakaj v. Keisler*, 2007 WL 3102100, at \*4 (6th Cir. 2007) (unpublished) (citing *Selami v. Gonzales*, 423 F.3d 621, 624 (6th Cir. 2005)).  This Court reviews the factual findings of the BIA  for substantial evidence. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005).  Under this standard, the BIA's determination must be upheld unless "manifestly contrary to law," and any "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C.§ 1252(b)(4); *Mostafa*, 395 F.3d at 624.  Therefore, in order to reverse a factual determination, this Court "must find that the evidence not only supports a contrary conclusion, but indeed *compels* it."  *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992).

Where a BIA decision rests on the credibility of an applicant, such a finding is entitled to deference by this Court.  Indeed, "[c]redibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard.  This is a deferential standard: A reviewing court should not reverse simply because it is convinced that it would have decided the case differently." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) (internal citations omitted).  "While an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons.  An adverse credibility finding must be based on issues that go to the heart of the applicant's claim.  They cannot be based on an irrelevant inconsistency."  *Id.* at 926 (internal citations omitted).

**B.** **Analysis**

Lin argues that the BIA erred in denying his application for asylum inasmuch as its decision rested on adverse credibility determinations that do not go to the heart of his claim. We disagree.

The Attorney General, and an Immigration Judge on his behalf, has discretion to grant asylum to an applicant who qualifies as a "refugee." *See Chen v. Gonzales*, 447 F.3d 468, 471 (6th Cir. 2006). To qualify for asylum, therefore, an applicant must establish that they are a "refugee" and that they merit the favorable exercise of discretion by the IJ. *Ben Hamida v. Gonzales,* 478 F.3d 734, 736 (6th Cir.2007). A refugee is one "who is unable or unwilling to return [to his or her country of origin] because of persecution or a well founded fear of persecution on account of race, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a). Pursuant to 8 U.S.C. 1101(a)(42)(B), a person who has been forced to undergo a sterilization, or who has been "persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive birth control program shall be deemed to have been persecuted on account of political opinion." The statute further provides that "a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). The protections of the statute extend to the individual forced to undergo sterilization or abortion as well as their spouse. *In re C-Y-Z*, 21 I. & N. Dec. 915, 918 (BIA 1997) ("[T]he spouse of a woman who has been forced to undergo [a] . . . sterilization procedure can thereby establish past persecution.").

7

The burden of proof is on the applicant to demonstrate that he meets the definition of a refugee. 8 U.S.C. § 1158(b)(1)(B)(I). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a) & 208.13(b). Testimony is credible if it is "believable, consistent and sufficiently detailed to provide a plausible and coherent account." *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994). However, if the applicant's testimony "could be viewed as incredible, inconsistent, or incoherent, a fact-finder may reasonably conclude, absent corroboration, that the testimony is insufficient to meet the standard of proof required." *Sako v. Gonzales*, 434 F.3d 857, 862 (6th Cir. 2006). Although "irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination," *Sylla*, 388 F.3d at 926, they may be relevant to the question of credibility where they can be interpreted as "attempts by the applicant to enhance his claims of persecution." *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004).

### 1. Past Persecution

In denying Lin's application for asylum, the BIA affirmed the IJ's adverse credibility determination. In reaching this conclusion, the BIA relied on several specific findings of the IJ. First, the BIA noted several discrepancies between Lin's testimony during the hearing and his written application for asylum. For example, during the removal hearing, Lin initially testified that his wife was forced to wear an IUD after the birth of his second child. Lin later corrected himself after prompting from his attorney. While Lin's explanation that he was nervous during the hearing and that he did not understand the question because of language barriers may plausibly account for the misstatement, the BIA is nevertheless entitled to rely upon his demeanor and testimony during the

hearing to assess his overall credibility. Moreover, the IJ found Lin's testimony regarding the return of his wife to the village, despite knowledge that a sterilization order had been issued, to be incredible. Although Lin contends that the BIA did not adequately take into account the family values that undergird Chinese society in affirming the IJ's findings, the overall plausibility of Lin's application may constitute substantial evidence supporting an adverse credibility finding inasmuch as "[t]he trier of fact can base a credibility determination on 'all relevant factors' including the applicant's demeanor and the consistency and plausibility of the various statements." *Preldakaj*, 2007 WL 3102100, at *4 (citing 8 U.S.C. § 1158(b)(1)(B)(iii)).

Second, the BIA relied upon discrepancies between Lin's testimony and the documentary evidence submitted as part of his application for asylum. For example, a letter written by Lin's sister stated that the sterilization of Lin's wife occurred in 1996 after the birth of Lin's first child, rather than in 2001.[2] The BIA observed that Lin's sister was unable to testify directly or correct the discrepancy despite the fact that she lived only an hour and a half away in Toledo, Ohio. Reliance on Lin's failure to produce additional evidence in the form of his sister's testimony as a basis for an adverse credibility determination was not in error. Rather, "where it is reasonable to expect corroborating evidence . . . [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).

---

[2] Although Lin subsequently proffered a revised letter from his sister listing the date of his wife's sterilization as May of 2001, this Court may not consider such evidence because it was not before the IJ. *See Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003) (noting that this Court's review is limited to the administrative record that was the basis for the order of removal).

Additionally, evidence documenting the sterilization of Lin's wife was issued in 2002, more than a year after Lin alleged that his wife was forcibly sterilized. During the hearing, Lin initially testified that the documents were issued to his wife after the sterilization occurred. However, upon questioning from the IJ, Lin admitted that the documents were obtained after his attorney advised him that documentation of his wife's sterilization would be necessary for his asylum application. Certainly, discrepancies regarding when and where the sterilization took place go to the heart of Lin's asylum application as they can be viewed as an "attempt[] by the applicant to enhance his claims of persecution." *Daneshvar*, 355 F.3d at 623.

The BIA further relied upon the IJ's decision discounting the veracity of the documents certifying the sterilization of Lin's wife based on country reports noting that official certificates are issued only after the birth of a first child and that the distribution of fraudulent documents is pervasive. Lin argues that the IJ gave undue weight to the country reports and asserts that his province issues official documents regarding sterilizations. Lin, however, does not provide any additional evidence regarding the official practice of his province beyond his assertions and it cannot be said, therefore, that a contrary conclusion is compelled by the record before this Court.

Not all of the inconsistencies identified by the IJ and relied upon by the BIA, however, go to the heart of Lin's asylum application. The IJ noted that Lin did not mention that his furniture was damaged in his written application nor did Lin specify that he went to the "office" of the family planning leader regarding his wife's sterilization rather than the "home" of the family planning official. To the extent that these omissions or misstatements can be construed to be inconsistencies, they cannot be said to go to the heart of Lin's asylum application as they have little to do with the

critical question of whether his wife underwent a forced sterilization or whether Lin would be subject to future persecution.

Nevertheless, those discrepancies and inconsistencies which do go to the heart of Lin's asylum claim constitute substantial evidence to support the adverse credibility determination of the BIA. Although this Court may have chosen to exercise its discretion differently if faced with the same facts, this, however, is not the test. Rather, this Court must evaluate the BIA's determination for substantial evidence and reverse only if a contrary result is compelled by the record. In the case at bar, the BIA relied on evidence that Lin misstated when his wife was sterilized during his removal hearing; a letter by Lin's sister that contradicted the date Lin alleged that the sterilization occurred; and discrepancies contained in documentary evidence regarding the sterilization of Lin's wife that was issued by a different hospital and on a different date than represented by Lin. Here, "[t]he IJ's determination that [Lin] lacked credibility was not based on overwhelming evidence; however, [Lin] has not met the 'high standard of *compelling* a contrary result." *Bah v. Gonzales*, 462 F.3d 637, 640 (6th Cir. 2006) (internal citations omitted).

### 2. Well founded Fear of Future Persecution

In addition to past persecution, an asylum applicant may meet his burden by establishing a well founded fear of future persecution. In the context of forced sterilization, a person who reasonably fears that "he or she will be forced to undergo such a procedure or [will be] subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42).

Lin contests the BIA's finding that he did not sufficiently demonstrate a well founded fear of future persecution. The BIA summarily affirmed the IJ's determination that Lin did not meet his burden based on perceived inconsistencies between Lin's testimony before the IJ wherein he stated that he was told by friends that family planning officials were looking for him and that he would do well to leave China and his written application where he made no mention of such warnings. The IJ also found that Lin failed to demonstrate a well founded fear of future persecution based on country reports indicating increased ability to internally migrate within China to escape harassment or persecution by local family planning officials.

Lin's challenge to the IJ's finding is well taken inasmuch as the record indicates that the IJ placed undue emphasis on the omission of the warnings from Lin's written application. As this Court noted in *Liti v. Gonzales,* 411 F.3d 631, 638 (6th Cir. 2005), "the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and . . . holding applicants to such a standard is not only unrealistic but also unfair."

Nevertheless, Lin fails to address the IJ's finding that he failed to meet his burden of proof with respect to a well founded fear of persecution based on country reports indicating the increased ability of individuals to internally migrate within China to avoid persecution by family planning officials. This finding constitutes substantial evidence to support the denial of Lin's claim. Indeed, this Court has held that country reports "are generally the best source of information on conditions in foreign nations," and therefore, "the IJ's reliance on these reports is supportable." *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir.2004).

12

Moreover, even assuming that Lin could present evidence that he could not easily relocate within China, he failed to present an argument regarding the persecution he would face upon return to China. Instead, he offers a vague and unsupported statement that "he cannot live safely in Fuzhou City." (Pet. Br. at 21). Such a conclusory statement is insufficient to establish a well founded fear of persecution and does not compel a contrary finding by this Court. Therefore, we find that the BIA had substantial evidence upon which to rest its denial of Lin's asylum application.

**CONCLUSION**

For the reasons set forth above, we **DENY** the petition for review.

**ROGERS, Circuit Judge, dissenting.** Our review of factual determinations in asylum cases is of course very limited. In this case, however, the primary stated bases for questioning Lin's credibility cannot reasonably be read to support the adverse credibility determination.

The BIA relied on Lin's first stating that his wife was forced to wear an IUD after the birth of his second child, but later correcting himself after prompting from his attorney. This description exaggerates what was obviously a brief misstatement in an otherwise consistent articulation that Lin's wife was forced to get an IUD after her first child, and forced to be sterilized after her second. Lin first testified that after his first child's birth, "they took my wife to the hospital to have IUD." J.A. at 173. Later, the testimony ran as follows:

Q. What happened to you in China?

A. The reason I came to the U.S. is because after the second child, my wife was forced to have IUD insertion and that's why I came here to seek for political asylum.

Q. When was, after April 10, 2001, what exactly happened?

A. After the second child was born, my wife was forced to have sterilization.

Q. Sir, immediately after your first or your second child, what happened?

A. After the second daughter was born and she was forced to have sterilization and afterwards she has all kinds of physical conditions, the headache, the backache and all that stuff and she cried a lot and she's only 28 and she suffered these physical condition.

Q. How did you feel about having two daughters, sir?

A. I'm very (indiscernible).

Q. Sir, you stated that your wife had an IUD after her second child. When was this? You said your wife had an IUD after your second child. When was this?

A. After the second child was born, she got sterilized, sterilization.

14

Q.      Was this a mistake, sir?  Withdrawn.  Sir, a moment ago you said your wife had an IUD after the second child.  Was this a mis-statement?  Did you mis-speak?

A.      Well, no, my, after the first daughter was born, she was inserted the IUD and then after four years then we were allowed to have a second child.

J.A. at 177-78.  The misstatement that the IUD insertion was forced after the second child was immediately corrected without prompting and consistently maintained thereafter.  Therefore, the transcript can be fairly read only to show a brief instance of misspeaking.

The IJ also inferred incredibility from Lin's testimony that he and his wife returned to their village after the birth of their second child despite having knowledge that a sterilization order had been issued for his wife.  The IJ chose to disbelieve Lin's contention that he and his wife selflessly returned to their village so that the authorities would release Lin's mother from detention because the IJ found such behavior on the part of Lin and his wife to be "improbable."  There is, however, nothing incredible or improbable about Lin's argument.  Individuals commonly sacrifice themselves for the benefit of loved ones.  Nothing indicates that this did not happen in this instance other than the IJ's personal belief that it was improbable that Lin and his wife would return to their village under such circumstances.  Such personal belief does not satisfy the substantial evidence standard. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000) (citing *Shah v. INS*, 220 F.3d 1062, 1071-72 (9th Cir. 2000)).

The obviously erroneous date in the affidavit from Lin's sister also fails to provide support for the BIA's decision.  The statement in the affidavit that Lin's wife was sterilized in 1996 is obviously untrue, as a second child was later born.  Such an obvious date mistake does not support an adverse credibility inference.  Nor can an adverse inference be drawn from the sister's failure to

15

testify in person. She stated in her affidavit that she was not able to provide live testimony at the hearing, and — other than commenting that she only lived about an hour from the site fo the hearing — neither the Government nor the IJ suggested otherwise. Further, Lin testified that his sister could not appear in person because she was very busy and had a young child. That is a believable explanation, especially in light of the fact that his sister probably thought there was no need for her to testify since she had written an affidavit.

Finally, Lin cannot be found incredible on the basis of the documentation that he submitted to prove his wife's sterilization because there are no inconsistencies created by the documents or his testimony related thereto. Lin submitted two documents as evidence of his wife's sterilization: (1) a "Birth Control Operation Certificate" that was issued on May, 30, 2001, and was signed by a doctor and sealed by the Family Planning Service Station of LianJiang County; and (2) an "X-Ray Report" that was issued by the Hospital of Fujian Province on June 25, 2002, confirming that Lin's wife had been sterilized. The dates of those documents pose no problems to Lin's credibility. Lin did not testify that all of the documentation had been given to his wife at the time of her sterilization. Instead, he tried his best to explain that the Birth Control Operation Certificate had been given to his wife at the time of her sterilization (which is confirmed by the date on that document), and that she had obtained the X-Ray Report later in order to provide further proof or her sterilization. *See* Administrative R. at 217-18. There is nothing inconsistent about obtaining official documentation at the time of a surgery and then later gathering further medical evidence to support one's claims. Nor is there anything incredible about the very existence of the documents. The country report, on which the BIA relied, only said that the State Population and Family Planning Commission did not

16

issue certificates of sterilization. That does not mean that such certificates are not issued by other agencies, such as individual hospitals or the Family Planning Service Station of LianJiang County. Moreover, there is no evidence suggesting that the X-Ray Report confirming the sterilization is not authentic.

The other bases for the adverse credibility determination are even less substantial. I would therefore grant the petition for review. Denial of asylum based on the BIA's adverse credibility determination is not supported by substantial evidence.