NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0256n.06

**No. 19-3813**

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED** May 06, 2020 DEBORAH S. HUNT, Clerk |

CHIBUZOR GLORIA AGU, )
                                 )
      Petitioner, )
                                 )
                                 )
v. )
                                 )
WILLIAM P. BARR, Attorney General, )
                                 )
      Respondent. )
                                 )

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

OPINION

---

**BEFORE:** MERRITT, GUY, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Chibuzor Gloria Agu's ex-husband threatened and attacked her on three occasions in Nigeria, violent incidents that she claims were persecution on the basis of her religious practices. Because there is substantial evidence to support the conclusion that these three incidents were not persecution and that Agu can safely return to Nigeria, we **AFFIRM** the Board of Immigration Appeal's denial of her claims for asylum and withholding of removal.

## I. BACKGROUND

Agu is a native and citizen of Nigeria. Between 1995 and 2014, Agu was married to and lived with her now ex-husband in Lagos, Nigeria. She testified that the ex-husband, who belonged to an occult group known as the Ogboni Fraternity, threatened and attacked her on three separate occasions prior to their divorce in 2014 that he initiated. On the first occasion, the ex-husband was upset and pushed her when he discovered that Agu, who belonged to the Pentecostal Church,

had allowed her brother to pray in their home. On the second occasion, the ex-husband again pushed and slapped her when he found out that she was attending church. And on the third and most violent occasion, when the ex-husband requested and Agu refused to hand over keys to her store, he strangled and punched her, threw a concrete block at her, and threatened to kill and eat her if she ever came back to the house.

Agu left her home, stayed in a hotel for a few days, went to live with her immediate family out of town for a few weeks, and then returned to Lagos and stayed with extended family for about sixteen months. During that time, Agu did not hear from or have any contact with the ex-husband, except when she heard that he had contacted a vigilante group to kill her. She reported this threat to the police commissioner, who arranged a meeting with her and the ex-husband. Agu testified that the police commissioner dismissed the issue and made statements implying that she would be harmed if she did not drop the complaint. Thereafter, neither Agu nor her family had any contact or threats from the ex-husband, and she continued to attend the same church during this time. Agu has also expressed fear for the terroristic activity of Boko Haram, who she said had kidnapped her brother in the past.

Agu entered the United States on a nonimmigrant visitor visa around August 6, 2015. She remained past the period authorized on her visa and was issued a Notice to Appear by the Department of Homeland Security on October 13, 2017. On November 8, 2017, Agu appeared before an immigration judge (IJ), admitted the factual allegations against her, and conceded removability. She also applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).[1]

---

[1] Agu did not appeal her CAT claim to the BIA and concedes that she is not challenging the IJ's determination of the claim before this court.

Before the IJ, Agu claimed that she experienced past persecution and would be subjected to further persecution based on her membership in several particular social groups, one of which was based on her Christian faith. The IJ found that Agu's asylum application was time-barred and that she did not meet any of the available exceptions to overcome the time limitation. The IJ alternatively denied her petition on the merits.

Agu appealed the denial of her asylum and withholding claims to the Board of Immigration Appeals (BIA), which affirmed the IJ's findings. The BIA found that the third incident of violence, which was the most serious, was based on a dispute over Agu's store keys and did not have any nexus to a protected ground. And, in considering the other two incidents together, the BIA held that they did not rise to the level of persecution. The BIA determined that Agu could not claim a well-founded fear of future persecution because she was able to stay in Nigeria for a period of many months after the third incident without any attempt from the ex-husband to contact or harm her, and thus she could reasonably relocate within Nigeria to avoid future harm.

Agu appeals, challenging the BIA's and IJ's determination that she did not experience past persecution, that the third incident of violence lacked nexus to her religious practice, and that relocation without future harm was a possibility.

## II.   ANALYSIS

We review the BIA's findings of fact under the substantial evidence standard. *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). "The substantial evidence standard requires us to uphold the Board's findings as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We review both the

decisions of the IJ and the BIA when the BIA adopts the IJ's reasoning. *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005).

As a preliminary matter, the IJ held that Agu's asylum application was time-barred because she did not file the application within one year of her arrival to the United States, and she did not meet the extraordinary circumstances exceptions to the time limitation. *See* 8 U.S.C. § 1158(a)(2)(B)–(D). Agu does not challenge this determination on appeal, and we lack jurisdiction to review asylum applications denied for untimeliness on discretionary or factual grounds. *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011). Agu cannot prevail on her asylum claim.

Even though Agu did not meet the statutory requirements of filing for asylum, the BIA and the IJ denied Agu's persecution claims on the merits as well. We now turn to the merits, which we must review because Agu challenges on appeal the denial of her claim for withholding of removal that is based on the same persecution claims.

Withholding of removal is a discretionary relief from removal to a country if the applicant's "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). To be eligible for withholding of removal, an applicant must show past persecution or that she will "more likely than not" be persecuted on one of the protected grounds in the future. 8 C.F.R. § 1208.16(b); *I.N.S. v. Stevic*, 467 U.S. 407, 429–30 (1984). "This standard is more stringent than that governing eligibility for asylum." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (citing *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006)).

The BIA affirmed the IJ's findings that Agu's three incidents with the ex-husband did not meet the definition of past persecution, including the determination that the most violent third

incident was over Agu's store keys and was not motivated by any protected grounds. Agu now argues for the first time, without citation to the record, that the ex-husband wanted the keys to take control of the store away from her, which was in turn motivated by her religious participation. Neither her testimony nor the record support this claim.[2]

Considering the remaining two incidents alone, the BIA affirmed the IJ's finding that the incidents do not rise to the level of persecution and that she was not a member of her proposed particular social groups. Agu does not contest on appeal the lack of nexus to any of the particular social groups, but rather argues that the incidents were motivated by her religion. We do not need to determine if the incidents had the requisite nexus to the protected ground of religious participation, because Agu does not show on appeal how the incidents satisfy the standard of persecution. To demonstrate persecution, she offers only her testimony. Based on her testimony concerning the first two incidents, the IJ found that the ex-husband's threats were not exceptional, *see Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) ("The cases recognizing that threats can sometimes amount to persecution emphasize that they will do so only in exceptional cases."), and the harm inflicted—he pushed and slapped her—do not rise to the level of persecution, *see Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) ("[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive."). These incidents are reprehensible, but we have consistently held that isolated incidents of limited severity do not amount to persecution, which "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Lumaj v. Gonzales*, 462 F.3d 574, 577–78 (6th Cir.

---

[2] While Agu did not raise religious practice as a protected ground before the IJ, she did propose "Christians who oppose occult groups and their practices" as one of her particular social groups, and the IJ did find that the second of the three incidents was motivated by her exercise of religion. For the purposes of this appeal, we do not find, as the government suggests, that she waived any argument of persecution based on religious participation because she has not exhausted the claim.

2006) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)); *see also Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). We cannot find that the BIA and IJ erred in weighing the evidence in the record under the deferential substantial evidence standard. *See Mikhailevitch,* 146 F.3d at 388 ("Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently.").

The BIA also found that Agu had not shown a well-founded fear of future persecution, which is necessary for her asylum claim, because she was able to stay in Nigeria for about 16 months after the last violent incident. During that time, the ex-husband did not attempt to contact or harm her, and Agu safely continued to attend the same church. The BIA also found no evidence that the ex-husband threatened her during or after the meeting with the police commissioner, or that the Nigerian government would be complicit in any future threats or physical abuse. There is no evidence to support her alternative argument that she is not safe in Nigeria because of the activities of Boko Haram—she had no interactions with Boko Haram or any other criminal groups, and her claims are based solely on the ex-husband's violent acts. Substantial evidence supports the BIA's findings, and the record lacks evidence "so compelling that no reasonable factfinder could fail to find the facts . . . alleged." *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005).

## III.  CONCLUSION

Agu cannot prevail on her untimely asylum claim and has not shown that she can meet the more stringent "more likely than not" standard of future persecution for her request for withholding of removal. We **AFFIRM** the BIA's decision.