NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0346n.06
Filed: June 18, 2008

No. 07-3469

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KHADI EL GHORBI, | **)** | |
| | **)** | |
| **Petitioner,** | **)** | |
| | **)** | **ON PETITION FOR REVIEW** OF A |
| v. | **)** | FINAL ORDER OF THE BOARD OF |
| | **)** | IMMIGRATION APPEALS |
| MICHAEL B. MUKASEY, | **)** | |
| | **)** | |
| **Respondent.** | **)** | **O P I N I O N** |
| | **)** | |
| | **)** | |

BEFORE:    MOORE and CLAY, Circuit Judges; SCHWARZER,[*] District Judge.

**WILLIAM W SCHWARZER, District Judge.**  Khadi El Ghorbi ("El Ghorbi") petitions

for review of an order of the Board of Immigration Appeals ("BIA") dismissing her appeal from an

Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, relief under

the Convention Against Torture ("CAT"), and voluntary departure.  We deny the petition because

substantial evidence supported the BIA's decision, El Ghorbi failed to exhaust her due process claim,

and we lack jurisdiction to review El Ghorbi's voluntary departure challenge.

## I.  BACKGROUND

Inasmuch as the BIA determined that El Ghorbi's testimony was credible, the facts of this

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

case may be drawn from her testimony. El Ghorbi is a native and citizen of Mauritania. El Ghorbi was a resident of Nouakchott, one of Mauritania's largest cities, when her family ordered her to marry Mohamed El Mohamed ("Mohamed"), a man she had never met. Although El Ghorbi adheres to a moderate form of Islam, the male members of her family subscribe to "a very fanatic way of Islam that a woman has to obey any orders given to her from her family," and therefore told her that she did not have the right to refuse the order to marry Mohamed. Joint Appendix ("J.A.") 62. El Ghorbi and Mohamed were wed in a ceremony conducted under Sharia (Islamic) law, though El Ghorbi did not attend the ceremony.

After the ceremony, Mohamed tried to take El Ghorbi to live with him as his second wife. When El Ghorbi refused to go with him, she was beaten by her older brother, and was prevented from leaving her family's home. During this time she was also informed that if she did not "obey" her family's command, she would be "taken to [a] punishment home" where she would be "beaten by a man until [she] withdr[e]w from [her] problems." J.A. 64, 67. Although El Ghorbi was not sent to such a home, she was eventually taken to her grandfather's home in the Mauritanian countryside. She remained imprisoned in this home for several months, but eventually escaped back to Nouakchott, where she spent a year in hiding. El Ghorbi spent her time in hiding raising money to escape Mauritania, partially by selling land she had previously inherited, and eventually used this money to flee to the United States.

El Ghorbi entered the United States on March 24, 2001 as a non-immigrant visitor. She filed an affirmative asylum application in January 2002, seeking asylum and withholding of removal under Immigration and Nationality Act ("INA") § 208, 8 U.S.C. § 1158. Such an application also constitutes a request for consideration under Article 3 of the Convention Against Torture. *See* 8

2

C.F.R. §§ 1208.3(b), 1208.13(c)(1). An asylum officer denied the application and a Notice to Appear was issued on January 28, 2004. The Notice alleged that El Ghorbi was removable under INA § 237(a)(1)(B), 8 U.S.C. § 227(a)(1)(B), as an alien who overstayed her authorized period of stay in the United States.

On February 14, 2006, El Ghorbi appeared at a removal hearing, following which the IJ issued an oral decision denying her all relief, including voluntary departure, and ordering her removal to Mauritania.

On March 1, 2007, El Ghorbi filed a timely Notice of Appeal from the decision of the IJ. The BIA dismissed the appeal in a decision dated March 22, 2007. On April 18, 2007, El Ghorbi filed a motion to reconsider with the BIA which the BIA denied on May 25, 2007. El Ghorbi timely filed a petition for review and a motion to stay removal in this Court. We granted the motion to stay removal on April 27, 2007, and for the reasons discussed below we now deny the petition for review.

## II. ANALYSIS

### A.    Denial of Asylum and Withholding of Removal

To be eligible for asylum, an applicant must demonstrate that she has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular group, or political opinion. INA §101(a)(42)(A), 8 U.S.C. 1101(a)(42)(A); INA § 208(b)(1)(i), 8 U.S.C. § 1158(b)(1)(i); 8 C.F.R. § 1208.13(a). To qualify for withholding of removal, an applicant must meet a more stringent standard and demonstrate a clear probability that she will be persecuted on account of one of the protected grounds. *INS v. Stevic*, 467 U.S. 407 (1984). We review the relevant BIA determinations for substantial evidence. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). We will reverse only if a reasonable

3

adjudicator would be compelled to conclude that the alien should have been found eligible for asylum or withholding. *Singh v. Ashcroft*, 398 F.3d 396, 401-04 (6th Cir. 2005).

El Ghorbi argues that the BIA erred in its determination that she did not suffer past persecution and did not have a well-founded fear of future persecution. The BIA has defined persecution as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996) (cited in *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004)). El Ghorbi claims that she suffered family pressure to enter into an arranged marriage, a physical altercation with her brother that did not require her to seek medical attention, and confinement at her grandfather's home in the countryside. This abuse, however, was not inflicted by the government, and there is no evidence in the record, other than El Ghorbi's own testimony, that the government would have been unwilling or unable to control her family members and protect her from abuse. *See Raza v. Gonzales*, 484 F.3d 125, 129 (1st Cir. 2007) ("When an asylum claim focuses on non-governmental conduct, its fate depends on some showing either that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them."). El Ghorbi never complained to or sought protection from the government or the police. According to the State Department's 2004 Country Report on Human Rights Practices for Mauritania, which is included in the record, Mauritanian police and the Mauritanian judiciary do sometimes intervene in domestic violence disputes. Moreover, the report indicates that a principal obstacle to such intervention is not government unwillingness or inability to protect abused women, but rather the fact that "women in traditional society rarely sought legal redress." J.A. 107. We cannot conclude, based on this record, that a reasonable adjudicator would be compelled to find that El Ghorbi was

4

harmed by "persons the government is unwilling or unable to control." *See Kere v. Gonzales*, 252 Fed.Appx. 708, 713 (6th Cir. 2007) (no persecution in case where family members abused applicant because there was no evidence that the government was unable or unwilling to control the family members' conduct and protect the applicant); *Keita v. Gonzales*, 175 Fed.Appx. 711, 713 (6th Cir. 2006) (no eligibility for asylum when applicant testified she thought seeking police protection would be futile but offered no basis for that conclusion). El Ghorbi's claim of past persecution therefore fails.

Substantial evidence also supports the BIA's finding that El Ghorbi failed to demonstrate that she had a well-founded fear of future persecution. Even if El Ghorbi were to suffer similar abuses upon her return to Mauritania, there is nothing to indicate that such abuses would come at the hands of the government or persons the government is unable or unwilling to control. *Matter of Kasinga*, 21 I&N Dec. at 365.

Because El Ghorbi failed to establish eligibility for asylum, she necessarily fails to satisfy the higher standard for withholding of removal. *Stevic*, 467 U.S. 407.

**B. Denial of Relief Under the Convention Against Torture**

Withholding of removal under the CAT is available to an applicant who can show that it is more likely than not that she will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001). The BIA's findings underlying its determination that an alien is not eligible for relief under the CAT are reviewed for substantial evidence. *Singh*, 398 F.3d at 400.

Substantial evidence supports the BIA's determination that El Ghorbi failed to demonstrate

eligibility for CAT relief. El Ghorbi argued that upon her return she would face abuses similar to the kind she suffered before, but this does not constitute evidence of a likelihood that a public official or someone acting in an official capacity would subject her torture.

## C.  Failure to Exhaust Due Process Claim

El Ghorbi contends that the IJ violated her due process rights by deferring excessively to the Department of State's Country Report on Mauritania, and by evaluating the evidence in a shallow manner. El Ghorbi cannot prevail on her due process claim because she failed to raise this issue in her appeal before the BIA and thus failed to exhaust her administrative remedies in compliance with INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). *See Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005). Although there is an exception to the exhaustion requirement for constitutional challenges to the procedures used by the IJ and the BIA, that exception is not relevant here because it applies only to claims involving procedural problems that are not correctable by the BIA. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).

## D.  Denial of Voluntary Departure

El Ghorbi challenges the denial of her request for voluntary departure pursuant to 8 U.S.C. § 1229c(a)(1), but we may only review such challenges with respect to constitutional or legal questions. *See Patel v. Gonzalez*, 470 F.3d 216, 219 (6th Cir. 2006). El Ghorbi's argument is that the IJ's finding that she did not agree to depart voluntarily is erroneous. This is a factual, not a legal, issue. We lack jurisdiction to review this claim.

### III.  CONCLUSION

For the reasons stated, the petition for review is **DENIED**.

**CLAY, Circuit Judge, concurring.** I concur fully in the majority's determination that, because El Ghorbi has not shown that the abuse she experienced was "inflicted by the government of [Mauritania], or by someone whom the government is unwilling or unable to control," she is not entitled to relief in this Court. *Berishaj v. Gonzales*, 238 F. App'x. 57, 61 (6th Cir. 2007) I write separately to express my disagreement with the BIA's determination that, even if Mauritanian authorities had acquiesced in the maltreatment of El Ghorbi, her "past experiences in Mauritania with her brothers do not rise to the level of past persecution." (J.A. 30)

Numerous Sixth Circuit cases suggest that beatings combined with a "significant deprivation of liberty" may constitute persecution when the victim's government allows such maltreatment. *See, e.g., Mburu v. Gonzales*, 214 F. App'x 505, 508 (6th Cir. 2007); *Gilaj v. Gonzales*, 408 F.3d 275, 284 (6th Cir. 2005); *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004). In the instant case, El Ghorbi was not only beaten by her family, she was imprisoned for several months until her eventual escape and flight to this country. As several months of imprisonment is a "significant deprivation of liberty," had such a deprivation been imposed on her by the Mauritanian government, or had El Ghorbi shown that the Mauritanian government was "unwilling or unable to control" her captors, then the beatings and imprisonment inflicted on her by her family would have amounted to persecution..

Nevertheless, because the record in this case does not compel a finding that the Mauritanian government was unwilling or unable to control El Ghorbi's family, I join the majority opinion in its entirety.