<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 16a0697n.06

No. 16-3022

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 28, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| NATALIO PEREZ-AGUILON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| LORETTA LYNCH, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent-Appellee. | ) | |
| | ) | |

**BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Natalio Perez-Aguilon, a Guatemalan citizen, seeks review of a Board of Immigration Appeals (the Board) decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Because Perez-Aguilon is not eligible for such relief, we deny his petition.

I.

Natalio Perez-Aguilon is a native and citizen of Guatemala who first came to the United States in December 2003. On March 31, 2011, the U.S. Department of Homeland Security (DHS) issued Perez-Aguilon a Notice to Appear. DHS asserted that Perez-Aguilon was subject to removal under Sections 212(a)(2)(A)(i)(I) and 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182, because he was an alien present in the United States who had not been admitted or paroled, and because he had been convicted of forgery, a crime of moral turpitude. Perez-Aguilon conceded his removability for being present without admission

but denied removability on the grounds that he had committed a crime of moral turpitude. An immigration judge agreed, finding his forgery conviction fell within the "petty offense exception" to the removal statute. AR 431–33.

Perez-Aguilon then applied for asylum, withholding of removal, and relief under the CAT, or, alternatively, voluntary departure. At a March 10, 2014 hearing, Perez-Aguilon confirmed that he was seeking relief, in part, on the basis of his membership in a particular social group: "Civilian witness[es] who assist[] law enforcement against criminal enterprises that threaten communities." AR 150–51.

At the March 10 hearing, Perez-Aguilon testified about his life in Guatemala. He told the immigration judge that he was born in the village of Venecia in 1975, moved to Guatemala City at age fourteen, and remained there until he left for the United States in 2003.

Perez-Aguilon testified that in 1998, while working for a local store in Guatemala City, he was the victim of an attempted car-jacking while delivering goods for the store owner. He stated that the attackers mistook him for the store owner, told him they were going to kill him, and then shot him in the head. Perez-Aguilon assisted the police in investigating the incident and eventually testified at the shooter's trial, leading to the shooter's conviction and sixteen-year prison sentence. Perez-Aguilon claimed that on the day of the trial, men involved in the attack told him, "We are going to kill you," and that shortly thereafter, he was told that men had come to his neighborhood looking for him. AR 165, 167. Perez-Aguilon reported this to the police. Because he believed that the police did not take any action in response to his report, and because he believed that the police could not protect him, Perez-Aguilon moved to the Tierra Nueva neighborhood of Guatemala City in 2001 and found a job driving a city bus.

This new job was not without incident. Perez-Aguilon stated that gang members would regularly board his bus and steal money from passengers. He testified that when a bus passenger was shot and killed by gang members, he gave the police his name and bus number, but never gave a more detailed statement about the incident. He also testified that the gang members threatened his life when he refused multiple invitations to join their ranks. As a result of these experiences, Perez-Aguilon believes his life will be in danger if he returns to Guatemala.

In addition to his testimony, Perez-Aguilon submitted documentary evidence into the record. This included a 2012 United Nations report on human rights in Guatemala, a 2013 U.S. Department of State report on crime and safety in Guatemala, and Fox News and Newsweek articles about living conditions in Guatemala.

The immigration judge denied all relief. The judge found that Perez-Aguilon was "generally a credible witness," but refused to give significant weight to "inferences, conclusions, and opinions . . . that were unreasonable or unsupported by other credible evidence . . . ." AR 97–98. The judge found that Perez-Aguilon's asylum request was time barred because he had not filed within one year of arriving in the United States, and because he could not show that "changed circumstances" excused his late filing by claiming that he was unaware of the time limitation. The judge also held that Perez-Aguilon did not qualify for withholding of removal because he could not show "past persecution," had not defined a "particular social group," and could reasonably relocate to Tierra Nueva without fear of future harm. Finally, the judge refused to grant CAT relief because Perez-Aguilon had not shown that he would be tortured by, or at the acquiescence or willful blindness of, a public official.

Perez-Aguilon appealed. Before the Board, he first argued that the statute of limitations for his asylum claim should be excused because of "changed circumstances" described in the

State Department report. With respect to withholding of removal, he claimed that the immigration judge erred in refusing to accept his proposed social group, failing to consider evidence of emotional trauma sufficient to show past persecution, and failing to consider evidence of police involvement in violent crime. Finally, Perez-Aguilon argued that remand was necessary on his CAT claim because the immigration judge failed to "determine the probative value" of the human-rights and country-condition reports. AR 24.

The Board affirmed. It refused to consider whether changed conditions excused the untimely asylum request because the issue was not raised before the immigration judge and because Perez-Aguilon had conceded that it was untimely filed.[1] With respect to past persecution, the Board rejected the contention that the judge failed to consider evidence of emotional trauma and found that Perez-Aguilon had not shown that either (1) he was shot on account of a protected ground; or (2) the government was unwilling or unable to protect him. In considering Perez-Aguilon's proposed social group, the Board found that the group "lacked boundaries or limits," and that the record did not show that "Guatemalan society perceives the proposed group as [socially] distinct**." AR 4–5.** Furthermore, the Board found that Perez-Aguilon had failed to show how internal relocation would be unreasonable. The Board also denied CAT relief, agreeing that Perez-Aguilon had failed to show that he was more likely than not to be tortured by, at the direction of, or with the acquiescence of, a Guatemalan public official. Finally, the Board rejected Perez-Aguilon's request for remand, finding no indication that the judge had failed to consider documentary evidence.

Perez-Aguilon filed a timely petition for review.

---

[1] Perez-Aguilon does not challenge the Board's asylum finding in this appeal.

II.

Where the Board reviews an immigration judge's decision and issues a separate opinion, we treat it as a final agency determination. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015) (citations omitted). We review the immigration judge's decision to the extent the Board adopted the judge's reasoning. *Id.* at 692. Questions of law are reviewed *de novo*, but we grant "substantial deference" to the Board's interpretation of the INA and its accompanying regulations. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). We uphold the Board's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* (citation omitted). Findings of fact are reviewed under a substantial-evidence standard and are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016) (quoting 8 U.S.C. § 1252(b)(4)(B)).

III.

To qualify for withholding of removal under the INA, Perez-Aguilon must show that it is more likely than not that he will be persecuted upon his return to Guatemala "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (quoting 8 U.S.C. § 1231(b)(3)(A)); *see Marouf*, 811 F.3d at 179. There are two ways he can do this. If he can show past persecution on account of a protected ground, we must presume that his "life or freedom [will] be threatened in the future." 8 C.F.R. § 208.16(b)(1)(i). Without past persecution, he must show it is more likely than not that his life or freedom will be threatened upon return because of a protected ground. *Id.* § 208.16(b)(2). Both avenues of relief are precluded, however, if he can avoid persecution by reasonably relocating to another part of Guatemala. *Id.* § 208.16(b)(1)(i)(B), (b)(2); *see Melchor-Reyes v. Lynch*, 645 F. App'x 381, 384 (6th Cir. 2016). If Perez-Aguilon can show past

persecution or a state-sponsored persecutor, then the burden is on the government to show, by a preponderance of the evidence, that Perez-Aguilon can avoid any future threat by reasonably relocating to another part of Guatemala. 8 C.F.R. § 208.16(b)(1)(i)(B), (b)(3)(ii). Otherwise, Perez-Aguilon must show that internal relocation is unreasonable. § 208.16(b)(2), (b)(3)(i).

Both the immigration judge and the Board concluded that Perez-Aguilon failed to qualify for withholding of removal under the INA. We agree. There is substantial evidence to support the Board's findings that Perez-Aguilon has not suffered past persecution in Guatemala and that any claim of future persecution is precluded because he failed to show that it would be unreasonable for him to relocate to the Tierra Nueva neighborhood of Guatemala City. Because this precludes Perez-Aguilon's claim for withholding of removal under the INA, we need not decide whether his proposed social group, "[c]ivilian witness[es] who assist[] law enforcement against criminal enterprises that threaten communities," is sufficiently particular or socially distinct to satisfy the statutory scheme.[2] AR 150–51.

## A.

Persecution is "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009) (citations omitted). We discern four alleged incidents of past persecution: (1) the car-jacking where Perez-Aguilon was shot in the head; (2) the subsequent threats he received from the shooter's accomplices; (3) these accomplices looking for him in his neighborhood; and (4) the gang intimidation, threats, and violence he experienced as a bus driver.

---

[2] Although some of our sister circuits have directly addressed the question of whether and when civilian witnesses can qualify as a social group, *see, e.g.*, *Gashi v. Holder*, 702 F.3d 130, 132 (2d Cir. 2012); *Garcia v. Atty. Gen.*, 665 F.3d 496, 504 (3d. Cir. 2011); *Crespin-Valladares v. Holder*, 632 F.3d 117, 125 (4th Cir. 2011); *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013) (en banc), we have yet to do so.

The immigration judge found that Perez-Aguilon could not show past persecution on account of the car-jacking. Although the judge found that the severe physical harm from being shot was a sufficient injury, that harm came at the hands of a private actor, and the subsequent prosecution and conviction of the shooter showed the Guatemalan government was willing and able to help. The judge also found that the shooting had "no nexus to a protected ground" because Perez-Aguilon was shot based on the mistaken belief that he was the store owner. AR 101. The judge dismissed the remaining incidents as insufficient to constitute past persecution. The Board affirmed, finding no merit to Perez-Aguilon's argument that the judge had failed to consider all of the alleged incidents of persecution.

The record supports this result. There was no nexus between the car-jacking and Perez-Aguilon's claimed protected status as a witness. At the time, he was not in any way involved as a witness against a criminal enterprise. Furthermore, he testified that his attackers had mistaken him for the store owner.

Similarly, the gang violence he experienced as a bus driver in Tierra Nueva came at the hands of private actors and lacked any connection to his claimed protected ground as a witness. *See Umana-Ramos*, 724 F.3d at 670–71 (finding "[g]eneral conditions of rampant gang violence" insufficient and requiring that a petitioner be "targeted for abuse based on his membership in a protected category" (citation omitted)); *Cano-Huerta v. Holder*, 568 F. App'x 371, 373 (6th Cir. 2014) (holding that an attack by gang members did not constitute persecution). Furthermore, because Perez-Aguilon gave only a cursory statement to police as a result of the bus incidents, there is no basis to find a nexus between the gang activity and his claimed protected status.

The remaining incidents supporting Perez-Aguilon's claim of past persecution are the threats he received after testifying. Perez-Aguilon does not claim that the shooter's accomplices,

who allegedly made these threats, were government actors. Thus, he can succeed only if the Guatemalan government was unwilling or unable to control them. *See Khalili*, 557 F.3d at 436. Perez-Aguilon claims that he reported these threats to the police and that the police failed to take any action. Although he argues that this failure to act was a result of police corruption in Guatemala, his only evidence of such corruption comes from the country-condition reports he submitted. This evidence, along with his testimony that the police failed to act, is contradicted by the fact that Guatemalan police had pursued, charged, and convicted the shooter. Furthermore, it is entirely possible, if not likely, that the police responded to his reports without his knowledge. The conclusion that the police were unwilling or unable to control the accomplices, based solely on the fact that Perez-Aguilon reported the threats and never heard back from the police, is an unreasonable inference from the record. Accordingly, we find support for the finding that Perez-Aguilon did not show past persecution on account of the actions of the shooter's accomplices.

Finally, not considering the aggregate effect of these incidents was not error. Although we have recognized that an immigration judge must "analyze all the relevant facts and consider them in the aggregate," we have done so only in cases where all of the relevant facts had a nexus to protected activity. *See Haider v. Holder*, 595 F.3d 276, 287–88 (6th Cir. 2010) (considering whether repeated stops, searches, and incidents of physical assault by police officers were on account of the petitioner being a member of a political minority). The subsequent threats from the shooter's accomplices are the only incidents connected to Perez-Aguilon's claimed protected status as a civilian witness. Because the other incidents—including the serious injury he suffered during the car-jacking—had no such connection, there was no error in not considering them in the aggregate. Thus, we conclude that the Board's finding that Perez-Aguilon had not

established past persecution is both consistent with our prior decisions and supported by substantial evidence.

### B.

The immigration judge found that Perez-Aguilon could "safely relocate to the area of Tierra Nueva, where he resided for two years without any problems." AR 103. The Board affirmed this finding. Because Perez-Aguilon did not challenge the immigration judge's finding before the Board, he waived his ability to challenge such a determination on appeal. *See Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005) (holding an issue is waived "if it is not argued in the brief filed with the [Board]"); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) ("[O]nly claims properly presented to the [Board] and considered on their merits can be reviewed by this court . . . in an immigration appeal.").

Even absent the waiver, substantial evidence supports the finding that Perez-Aguilon could reasonably relocate to the Tierra Nueva neighborhood of Guatemala City without fear of future persecution. Where, as here, a petitioner cannot show past persecution and there is no state-sponsored actor, relocation is presumed reasonable and the petitioner must show it is unreasonable under the circumstances. *Nwagwu v. Gonzales*, 246 F. App'x 999, 1002 (6th Cir. 2007) (citing 8 C.F.R. § 208.16(b)(3)(i), (b)(3)(ii)).

Perez-Aguilon testified that he moved to Tierra Nueva to get away from the car-jacking attackers who were looking for him, and that he lived in Tierra Nueva for two years without any incident or retribution for testifying against the man who shot him. Although Perez-Aguilon testified that he observed gang violence and was threatened by gang members while working as a bus driver in Tierra Nueva, such general conditions of gang violence are not sufficient to constitute persecution under the INA. *See Umana-Ramos*, 724 F.3d at 670–71. There is no

evidence that Perez-Aguilon served as a witness while living in Tierra Nueva. He never did anything more than give the police his contact information in response to a single incident on his bus. Nothing in the record indicates that he would be subject to persecution on account of his claimed protected ground if he returned to Tierra Nueva. Accordingly, we conclude that Perez-Aguilon could not have satisfied his burden to show that relocation was unreasonable.

IV.

Relief under the CAT is available if Perez-Aguilon can establish that it is more likely than not that he would be tortured if removed to Guatemala. 8 C.F.R. § 208.16(c)(2). Torture "entail[s] the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). "The CAT does not afford protection to torturous acts inflicted by wholly private actors." *Zaldana Menijar*, 812 F.3d at 501. In evaluating a claim for relief under the CAT, an adjudicator must consider:

> [A]ll evidence relevant to the possibility of future torture . . . including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3); *see Mapouya v. Gonzales*, 487 F.3d 396, 414–15 (6th Cir. 2007).

Perez-Aguilon does not argue that he is eligible for CAT relief on the merits. Instead, he argues that remand is necessary under *Mostafa v. Ashcroft*, 395 F.3d 622 (6th Cir. 2005), because the immigration judge "did not list any factors nor make any determinations about the probative value" of his evidence of human-rights conditions in Guatemala.

In *Mostafa*, we held that the Board failed to analyze a CAT claim "in light of relevant country conditions and applicable legal precedent," because the Board had ignored *Matter of G-A-*, a previous *en banc* decision of the Board that was "obvious[ly] relevan[t]" to Mostafa's case. *Mostafa*, 395 F.3d at 623, 625–26 (citing *Matter of G-A-*, 23 I. & N. Dec. 366, 367 (B.I.A. 2002)). In *Matter of G-A-*, the *en banc* Board had recognized "extensive human rights abuses committed by the Iranian government," specifically with respect to individuals in the same situation as Mostafa—Iranian citizens returning from abroad who had applied for asylum in foreign countries. *Mostafa*, 395 F.3d at 652. Because the *Mostafa* Board had ignored directly applicable precedent, as well as evidence of human-rights conditions in Iran, we found that remand was appropriate. *Id.* at 625–26.

*Mostafa*, however, is not the only relevant case on this point. Where an immigration judge had only briefly considered CAT relief, we found the analysis deficient, in part, because the immigration judge did not analyze the CAT claim "through the lens of the four factors" in the regulations. *Mapouya*, 487 F.3d at 415. And in *Tello-Rivera v. Lynch*, we rejected a claim of error on the grounds that an immigration judge did not "specifically mention[] documentary evidence" about country conditions and human-rights violations. 644 F. App'x 697, 700 (6th Cir. 2016). In that case, we interpreted *Mostafa* and *Mapouya* to require only that an adjudicator adequately consider evidence relevant to the regulatory factors. *Id.* We were clear that they do not require "separate comment[] on every piece of evidence relating to these considerations." *Id.* This is a more narrow interpretation of *Mostafa* than what Perez-Aguilon suggests.

In this case, the immigration judge admitted Perez-Aguilon's five exhibits into evidence, including the human-rights reports.[3] In discussing CAT relief, the immigration judge stated:

---

[3] We review the immigration judge's decision here because the Board adopted the immigration judge's reasoning on this issue. *See Sanchez-Robles*, 808 F.3d at 691–92.

"When considering respondent's application for protection under the Convention Against Torture, this Court has considered all factors, including those identified in 8 C.F.R. Section 208.16(c)(3)." AR 103. The judge went on to note that Perez-Aguilon had not alleged any conduct, acquiescence, or willful blindness of a public official, and that with respect to Perez-Aguilon's case, "the government of Guatemala took appropriate actions in arresting, prosecuting, convicting, and sentencing the offender to prison." *Id.* The judge concluded that "[w]hen considering all other testimony and evidence the Court finds that [Perez-Aguilon] has failed to meet his burden of proof . . . ." *Id.*

This case is distinguishable from those in which we have found remand to be appropriate. Unlike *Mapouya*, the immigration judge here explicitly considered the Section 208.16(c)(3) factors in his analysis. And unlike *Mostafa*, Perez-Aguilon cannot cite any decision by the Board or this court indicating that his proffered evidence mandated a different result. Furthermore, he cannot show that evidence of general violence and corruption is directly relevant because he has not alleged that the conduct against him was undertaken by state actors.

Finally, the immigration judge's opinion indicates that the judge did, in fact, consider reports documenting conditions in Guatemala. The judge admitted the reports into evidence. As the parties agree, these reports discussed human-rights violations, institutional corruption, and general violence in Guatemala. By finding that the Guatemalan government had acted properly with respect to the individual who shot Perez-Aguilon, and by noting that Perez-Aguilon had not alleged any corruption or violence on the part of a public official that would impact him, the immigration judge sufficiently addressed the concerns raised by the reports.

Although the opinions from both the immigration judge and the Board would certainly benefit from an explicit discussion of Perez-Aguilon's documentary evidence regarding human-

rights conditions in Guatemala, the analysis is not so deficient as to require remand.

Accordingly, we deny Perez-Aguilon's petition with respect to his claim for CAT relief.

V.

For the foregoing reasons, the petition for review is denied.