NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0169n.06

Case No. 18-3651

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 02, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELHADI MANASSIR SEYE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: BATCHELDER, McKEAGUE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. After the Department of Homeland Security began removal proceedings against Elhadji Manassir Seye, he sought asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge denied him relief and the Board of Immigration Appeals affirmed. For the following reasons, we DENY his petition for review.

I.

Seye is a native and citizen of Senegal. For most of his life he was a member of an Islamic sect called the Morite Brotherhood, like the rest of his family. At some point, he began to support a competing Islamic sect called the Tijane Brotherhood. His family tried to convince him to return to the Morite Brotherhood but failed.

What his family could not accomplish with words they later tried to accomplish with sticks and fists: Seven members of Seye's family beat him at his uncle's home and demanded that he

return to the Morite Brotherhood. The beating lasted about an hour and only stopped when he agreed to return. As a result, Seye was left bruised and cut. But before leaving the house, Seye recanted his support for the Morite Brotherhood. He then ran from the home and took a taxi to Dakar.

In Dakar, Seye lived with a friend for one month until his friend told him that he could not stay with him forever. Around this time, he encountered a man from Mbour who told him that his family was still looking for him and would try to kill him if they found him. He never reported this or his beating to the Senegalese police. Instead, he decided to leave Senegal and eventually found his way to the United States.

The Department of Homeland Security ("DHS") detained Seye when he arrived. Seye later expressed a fear of retuning to Senegal and an asylum officer determined he had a credible fear of persecution. DHS then placed Seye in removal proceedings and, proceeding pro se, he sought asylum, statutory withholding of removal, and protection under the Convention Against Torture. An immigration judge ("IJ") denied Seye's application for relief and the Board of Immigration Appeals ("BIA") affirmed. Seye now challenges the denial of his asylum and withholding of removal claims.

## II.

To be eligible for asylum, Seye must show that he is "unable or unwilling to return" to Senegal "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). If Seye cannot establish his eligibility for asylum, he necessarily fails to establish his eligibility for withholding of removal too. *See Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). Here, the BIA issued its own decision agreeing with and

affirming portions of the IJ's decision. So we review both the BIA's decision and those parts of the IJ's decision relied on by the BIA. *See Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). We review legal conclusions de novo and factual findings for substantial evidence. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). Under the substantial evidence standard, we "may not reverse the Board's determination simply because we would have decided the matter differently." *Id.* at 247 (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). The BIA's findings of fact are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Zhaou*, 569 F.3d at 247 (quoting 8 U.S.C. § 1252(b)(4)(B)).

### III.

Seye begins his challenge by arguing that the IJ erred in two related ways: First, by requiring him to corroborate certain aspects of his oral testimony. And second, by failing to analyze whether that evidence was reasonably obtainable. Accordingly, Seye's argument is based on the premise that the IJ denied him relief because he failed to corroborate his testimony. But that premise is mistaken.

To be sure, the IJ found "that there were elements of his claim that seem[ed] rather implausible" so that "some corroborative evidence [was] in order." [A.R. 47–48.] That said, in the next section of its decision—aptly titled, "Corroboration"—the IJ noted "several exhibits" that Seye submitted "[i]n support of his application." [*Id.* at 48.] And it found "that [Seye] ha[d] submitted evidence to corroborate some aspects of his claim." [*Id.*]

The reason the IJ denied Seye relief is that he failed to "demonstrate that [he] was persecuted on account of his religion." [*Id.* at 49.] In other words, the IJ found that Seye had failed to meet his burden of proof even though he corroborated parts of his claim. Seye's remaining evidentiary arguments are, at bottom, challenges to that factual finding.

"When an asylum claim focuses on non-governmental conduct, its fate depends on some showing either that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them." *Abdramane v. Holder*, 569 F. App'x 430, 437 (6th Cir. 2014) (citing *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009)). Seye failed to make that showing here. As mentioned, Seye never reported his family's attack to the Senagalese authorities. And we have repeatedly held that a petitioner fails to meet his burden when his asylum claim arises from non-governmental conduct and he has not sought the government's protection. *See, e.g.*, *id.* at 437; *El Ghorbi v. Mukasey*, 281 F. App'x 514, 517 (6th Cir. 2008); *Ralios Morente v. Holder*, 401 F. App'x. 17, 24 (6th Cir. 2004).

Seye argues, however, that he was entitled to relief because he "credibly testified" that the Senegalese police would not have helped him even if he had sought their protection. Although the IJ found that Seye "was overall a credible witness," [A.R. 47] he cites nothing to support his assertion that the IJ had to accept everything he said as true. On the contrary, in both *El Ghorbi* and *Ralios Morente*, we held that the petitioner failed to meet his burden even though the BIA and IJ, respectively, had found the petitioners to be "credible." *See El Ghorbi*, 281 F. App'x at 515; *Ralios Morente v. Holder*, 401 F. App'x at 20.

Seye also cites State Department country reports, which detail evidence of corruption in the Senegalese government, to support his claim that the police would not have helped him. But these same country reports also show that Senegal's justice system is capable of arresting, prosecuting, and convicting criminals. And the reports show that Senegal allows its citizens to freely associate and practice their religious beliefs "provided public order is maintained." [A.R. 234.] *See also Perez-Aguilon v. Lynch*, 674 F. App'x 457, 463 (6th Cir. 2016) (holding that

an asylum applicant had failed to meet his burden where "his only evidence of [] corruption [came] from the country-condition reports he submitted").

We find that a reasonable adjudicator would not be compelled to evaluate the facts differently. Based on those facts, Seye has not met his burden of establishing his eligibility for asylum. We therefore hold that the IJ's and BIA's decisions denying Seye asylum and withholding of removal were supported by substantial evidence.

Seye also makes several procedural arguments, including that the IJ violated the Immigration and Nationality Act, the Administrative Procedure Act, and due process by supposedly failing to develop the administrative record. But Seye did not properly preserve these claims for our review.

We "may review a final order for removal 'only if the alien has exhausted all administrative remedies available to the alien as a matter of right.'" *Tomaszczuk v. Whitaker*, 909 F.3d 159, 167 (6th Cir. 2018) (quoting 8 U.S.C. § 1252(d)). "Accordingly, this Court may review only those claims 'properly presented to the BIA and considered on their merits.'" *Id*. (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). Seye "failed to satisfy the exhaustion requirement in this case because these claims were not included in either [his] notice of appeal to the BIA or his supporting brief." *Id*. We therefore lack jurisdiction to review these claims. *Id.*

Seye urges us to disregard our published precedents setting forth this exhaustion requirement because he thinks 8 U.S.C. § 1252(a)(2)(D), as evidenced by its legislative history, provides us jurisdiction to review these claims. That, of course, ignores the fact that we are powerless to overrule the published decisions of a prior panel "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc

overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

Even so, Seye argues that the better reading of our cases is to view the exhaustion requirement as a "case processing tool" rather than as a jurisdictional bar to our review. He asserts that in several of those cases, we "ruled on the 'due process' issue" even though we were jurisdictionally barred. *See, e.g.*, *Viluda de Mejia v. Sessions*, 691 F. App'x 245, 250 (6th Cir. 2017) (holding that the petitioner's claim would fail on the merits "even if it were before the court"). But simply because we have sometimes explained in dicta why a petitioner's unexhausted claims would also fail on the merits does not mean we may grant relief on such claims.

Finally, Seye cites *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006), for the proposition that "[g]enuine due process claims do not require exhaustion of administrative remedies." [Seye Reply Br. at 27.] While, in *Sterkaj*, we said that "an alien's due process challenge generally does not require exhaustion," we also said that "the alien must raise correctable procedural errors to the BIA." *Sterkaj*, 439 F.3d at 279 (citing *Ramani*, 378 F.3d at 559 and 8 U.S.C. § 1252(d)(1)). We then held that we were precluded from reviewing the petitioner's due process claim because he had "failed to exhaust [his] administrative remedies." *Id.*

Similarly, even if we assume that the IJ had failed to adequately develop the record here, this was correctable procedural error that Seye could have raised with the BIA. *See In Re: Fernando Saenz-Ledesma*, 2014 WL 3795544, at *1 (B.I.A. June 13, 2014) (remanding to the IJ to develop the record); *In Re: Babak Moslemnejad Tork*, 2007 WL 927137, at *2 (B.I.A. Feb. 27, 2007) (same). So Seye cannot circumvent our exhaustion requirements.[1]

---

[1] Our recent decision in *Mendoza-Garcia v. Barr*, No. 18-3513, 2019 WL 1143956 (6th Cir. Mar. 13, 2019) (published) is not to the contrary. There, we held that due process requires IJs to "help pro se parties develop the record." *Id.* at *3. We did not hold, however, that we have jurisdiction

For these reasons, we DENY Seye's petition for review.

_____

to review this issue where the petitioner has failed to exhaust his administrative remedies. And it is worth noting that the petitioner in *Mendoza-Garcia* properly presented this issue to the BIA before presenting it to our court. *See id.* at \*2.